1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAMMY R. QUAIR, SR.,

11              Plaintiff,                    No. 2:11-cv-2293 JAM CKD P

12       vs.

13   GERTZ,

14              Defendant.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with an action for violation of civil

17   rights under 42 U.S.C. § 1983.  Plaintiff alleges that defendant Gertz failed to protect him from

18   harm in violation of the Eighth Amendment.  (Dkt. No. 1.)  Defendant Gertz's September 12,

19   2012 motion for summary judgment is before the court.  (Dkt. No. 44.)

20   II.  <u>Summary Judgment Standard</u>

21              Summary judgment is appropriate when it is demonstrated that there exists "no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c).

24              Under summary judgment practice, the moving party

25              always bears the initial responsibility of informing the district court
              of the basis for its motion, and identifying those portions of "the
26              pleadings, depositions, answers to interrogatories, and admissions

1

on file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party

2    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4    versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

5    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6    genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

7    committee's note on 1963 amendments).

8    In resolving the summary judgment motion, the court examines the pleadings,

9    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

12   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

13   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

16   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

17   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

18   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20   On September 18, 2012, the court advised plaintiff of the requirements for

21   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Woods v.

22   Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en

23   banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.

24   1988).

25   \\\\\

26   \\\\\

III.  Plaintiff's Allegations

      This action proceeds on the original, verified complaint filed August 29, 2011. Plaintiff alleges that in 2010, while he was incarcerated at Butte County Jail, defendant Gertz failed to protect plaintiff from his cellmate, Darrel Doshier.  Plaintiff alleges that he submitted several request slips to Gertz stating that his "life was in danger" but was not moved to a different cell before he was injured in a fight with Doshier.  (Dkt. No. 1.)

IV.  Facts

      As a preliminary matter, the court notes that when a complaint is verified under penalty of perjury, it has the effect of an affidavit to oppose summary judgment "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).  Plaintiff has also filed evidence in opposition to summary judgment, accompanied by an assertion that this evidence is conclusive proof of his claims.  (Dkt. No. 53 at 2.)  The court has construed this filing as plaintiff's opposition to summary judgment.  (See Dkt. No. 54.)  Insofar as plaintiff's opposition does not cite to particular record materials or show how any such materials establish the presence of a genuine dispute of material fact, the court will deem the facts in the record undisputed for purposes of the motion pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

      On May 6, 2010, plaintiff was booked into the Butte County Jail (BCJ).  DUF 3. According to classification records at the BCJ, plaintiff was documented as a dropout of the Norteno and/or Nuestra Familia gangs.  DUF 3, 6.  Plaintiff was housed in Sensitive Needs Housing (SNH), where assigned inmates are usually gang dropouts with prior prison history. DUF 5.  He was housed in SNH unit S1.  DUF 3.

      On June 25, 2010, inmate Darrell Doshier came into custody at BCJ.  DUF 10. He was documented as a Norteno dropout.  DUF 7.  Doshier was housed in SNH unit S1, sharing a two-person cell with plaintiff.  DUF 10.

\\\\\

1           During this time, defendant Gertz was a correctional officer at BCJ, assigned to

2    work the Classification Unit.  DUF 1.  On July 17, 2010, while defendant was the assigned

3    Classification Officer, he received an inmate request form from plaintiff in which plaintiff

4    requested a cell move.  DUF 12.  Both plaintiff and defendant submit this inmate request as

5    evidence.  Contrary to plaintiff's assertion in the complaint, it does not state that plaintiff

6    believed his "life was in danger."  Rather, plaintiff states in the request that he and Doshier were

7    "not getting along."  (Dkt. No. 44-4 at 1; see Dkt. No. 53 at 3.)

8           That day, defendant contacted non-defendant correctional officer Leonard and

9    directed him to move plaintiff to another cell in order to prevent any problems between plaintiff

10   and Doshier.  DUF 14.  Leonard went to plaintiff's cell to discuss it it with him, but plaintiff

11   refused to move, stating that he and Doshier were "cool."  DUF 15.  Ten minutes after defendant

12   told Leonard to move Quair to a different cell, Leonard reported to defendant that plaintiff

13   wanted to cancel the move because it was no longer necessary.  DUF 16.  On the "Response"

14   portion of plaintiff's July 17, 2010 inmate request form, defendant noted: "Refused to move to a

15   different cell on 7-17-10 when asked to move."  (Dkt. No. 44-4 at 1.)

16          Two days later, on July 19, 2010, plaintiff approached non-defendant officer

17   Foster and requested a "courtesy move" to a cell with another inmate, Garcia.  Foster asked

18   plaintiff if he was having problems with his cellmate, and plaintiff responded that he was not, but

19   that he wanted to switch cells because he knew Garcia from the streets and they were "homies."

20   DUF 17.  Foster returned to the classification office and informed defendant of plaintiff's

21   requested "courtesy move" to another cell.  Defendant informed Foster that on July 17, 2010,

22   plaintiff had requested and later refused a cell move.  DUF 18.

23          Plaintiff submitted another request to move cells on July 22, 2010, stating that

24   "you guys need to get [Doshier] of this drop out pod before someone gets killed or stabbed.  I've

25   got safety concerns for myself and all drop outs.  Please help - ASAP."  Dkt. No. 44-10 at 1.

26   Defendant was not assigned to work as a Classification Officer on July 22, 2010 and did not

1   receive this request form.  DUF 20.

2          Plaintiff submitted another cell move request on July 25, 2010, stating in part: "If

3   anything happens to either of us or if staff gets hurt during the process of breaking up a fight, I

4   will hold you responsible."  (Dkt. No. 44-11 at 1.)  Defendant was not assigned to work as a

5   Classification Officer on July 25, 2010 and did not receive this request form.  DUF 21.

6          Plaintiff submitted another cell move request on July 28, 2010, stating that he and

7   his "celly" were "not getting along at all." (Dkt. No. 44-12 at 1.)  This form was reviewed and

8   signed by non-defendant correctional officer Gray, one of the Classification Officers assigned to

9   Classification that day.  Defendant did not receive this form either.  DUF 22.

10         In sum, defendant declares under penalty of perjury that, between his July 17,

11  2010 attempt to move plaintiff to another cell and plaintiff's August 2, 2010 fight with Doshier,

12  defendant was assigned to work as a Classification Officer on the following days: July 18, 19, 28,

13  29, and August 1 and 2, 2010.  He declares that, during those six days, he did not receive any

14  Inmate Request Forms from plaintiff requesting a cell move.  He further declares that, after July

15  17, 2010, he "did not receive any information from any source that there were any potential

16  problems between inmates Quair and Doshier until their altercation on August 2, 2010."  (Dkt.

17  No. 44-3 at 3.)

18         Plaintiff's evidence consists of the inmate request forms submitted on July 17, 22,

19  25, and 28, 2010.  (Dkt. No. 53 at 3-7.)  In the complaint, he asserts that he submitted numerous

20  cell move requests to defendant and "got the attention of" non-defendant correctional staff, who

21  told him that it was "entirely up to Mr. Gertz to separate you guys."  (Dkt. No. 1 at 4.)

22         On August 2, 2010, plaintiff and Doshier had an altercation, during which

23  plaintiff slipped and hit his forehead on the corner of the cell table.  DUF 24-25.  As a result,

24  plaintiff required eight stitches.  (Dkt. No. 1. at 4.)

25  \\\\\

26  \\\\\

IV. <u>Discussion</u>

Defendant argues that plaintiff has not created a genuine dispute of fact that defendant knew of and disregarded an excessive risk to plaintiff's safety.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1991) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). " '[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'" Id. at 833. "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'[.]   For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id.  The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Supervisory officials cannot be held vicariously liable for the actions of their subordinates in a § 1983 action.  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989).  A supervisor can be held liable for a violation of constitutional rights even if he or she was not personally involved in the actions which led to the violation if the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.  <u>Id</u>.

Here the evidence shows that, when defendant first learned that plaintiff wanted to move to a different cell on July 17, 2010, he attempted to have plaintiff moved that same day, but plaintiff changed his mind and declined to move.  Plaintiff's July 17 request for a cell move did

1 | not suggest that he was at substantial risk of harm from his cellmate, but merely stated that

2 | plaintiff and Doshier were "not getting along."  Two days later, in light of plaintiff's July 17

3 | refusal to move, defendant did not act on plaintiff's request for a "courtesy move" to a cell with

4 | one of his friends.  At that time, given plaintiff's recent assertion that he and Doshier were "cool"

5 | and his statement to Foster that he and Doshier were not having problems, defendant had no

6 | reason to believe that plaintiff was at risk if he remained celled with Doshier.

7 |       Plaintiff subsequently filed an inmate request on July 22, 2010 that would have

8 | put jail staff on notice that he was at risk of harm from Doshier, as plaintiff expressed worries

9 | about being "killed or stabbed."  However, defendant was not working as a Classification Officer

10 | that day and denies ever seeing the request or hearing about it, and plaintiff has not raised a

11 | genuine dispute of fact as to whether defendant was aware of this request.  Similarly, plaintiff has

12 | not pointed to any evidence that contradicts defendant's assertion that he was unaware of

13 | plaintiff's July 25 and July 28 requests.  Even if defendant were the supervisor of non-defendant

14 | jail staff who knew of these requests, he cannot be held liable under section 1983 on a theory of

15 | supervisory liability.  Thus, there is no genuine dispute of fact as to whether defendant "knew of"

16 | and disregarded an excessive risk to plaintiff's safety.

17 |       In accordance with the above, IT IS HEREBY RECOMMENDED that:

18 |       1.  Defendant's motion for summary judgment (Dkt. No. 44) be granted; and

19 |       2.  This case be closed.

20 |       These findings and recommendations are submitted to the United States District

21 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

22 | days after being served with these findings and recommendations, any party may file written

23 | objections with the court and serve a copy on all parties.  Such a document should be captioned

24 | "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25 | shall be served and filed within fourteen days after service of the objections.  The parties are

26 | \\\\\

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated: March 8, 2013

4                                                    _____
5                                                    CAROLYN K. DELANEY
                                                     UNITED STATES MAGISTRATE JUDGE
6  2 / quai2293.sj

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26